## CHICAGO, M. & ST. P. RY. CO. v. McARTHUR.

### (Circuit Court of Appeals, Eighth Circuit, December 6, 1892.)

### No. 152.

1. RAILROAD COMPANIES—ACCIDENT AT CROSSING—CHILD ON TRACK—EVIDENCE.
    In an action against a railroad company to recover for an injury to a child upon the track it is competent to show by a recorded plat, according to which the town had been built and the lots sold, that the place where the accident occurred was within the limits of the town and of a street crossing, although such plat was not acknowledged in the manner required by the statutes.

2. SAME.
    Some children playing near a railroad track within the limits of a town, upon hearing the whistle of an approaching train, placed pins upon the rail, and then ran into some bushes. The persons in charge of the train intended to make a "flying switch," so as to cut out several cars from the middle of the train, and for that purpose the train was cut in three sections, the conductor pulling the pin between the first and second sections, and then immediately going to the rear of the first car of the second section to man the brake. After the first section had passed, the children ran out from the bushes, and one of them, while stooping to pick up the pins, was struck by the second section, the conductor being unaware of his presence. The place of the accident was within the limits of a street which, according to the plat of the town, here crossed the track, but the street had not been opened for vehicles, and was only used by pedestrians. *Held*, that on these facts the court properly refused to direct a verdict for defendant, for the failure to have a lookout on the front of the second section tended to show a want of proper care.

3. SAME—INSTRUCTIONS.
    The charge of the court being otherwise full and accurate, it was not error to state that the fact that the children were playing in a public street would not make them trespassers, and it would not be presumed that the jury inferred therefrom that the children had a right to play upon the track at the place in question.

In Error to the Circuit Court of the United States for the District of Minnesota.

At Law. Action by Frank McArthur, by W. W. McArthur, his guardian ad litem, against the Chicago, Milwaukee & St. Paul Railway Company, to recover damages for personal injuries. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

H. H. Field and William Gale, for plaintiff in error.

Frank B. Kellogg, (B. W. Eaton and Davis, Kellogg & Severance, on the brief,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge. From the record in this case it appears that on the 30th day of May, 1891, Frank McArthur, who was then about six years of age, was run over by some freight cars which formed part of a train operated by the Chicago, Milwaukee & St. Paul Railway Company over that branch of its line which passes through the village of Mazeppa, in Wabasha county, Minn. To recover for the injuries thus caused him this action was brought in the district court of Wabasha county, and was thence removed into the United

States circuit court for the district of Minnesota by the defendant company. A trial was had at the December term, 1891, of said court, and a verdict and judgment were returned and entered in favor of the plaintiff, to reverse which the case has been brought before this court upon a writ of error sued out by the defendant company.

From the evidence it appears that in 1856 a plat of the town of Mazeppa was executed and recorded by the owners of the realty included in such plat, and in 1878 a right of way 50 feet in width through said town was conveyed to the Minnesota Midland Railroad Company by the owners of the lots, the description in the deeds being by reference to the lots and blocks as laid out on the town plat. The defendant company in this action has succeeded to the rights of the Minnesota Midland Railroad Company, and its line of railway is operated over the right of way deeded as above stated, which enters the town from the southeast, and runs northerly, near the bank of the Zumbro river, to the depot. The business buildings and residences are to the east of the railroad, there being no houses between it and the river. Upon the plat of the town a street named Pine street is laid out, running westwardly from First street towards the river, and crossing the right of way of the railway. This street has not been opened and improved so as to be used for the passage of wagons or other vehicles, but some use has been made of it by pedestrians. At the time of the accident the train consisted of an engine, twelve freight cars, one baggage car, and a passenger coach. It was the purpose of the parties in charge of the train to place seven cars upon a spur track, which left the main track about two hundred feet north of Pine street, and to that end, as the train came into the town, it was cut into three sections; the first being composed of the engine and four cars, in charge of the engineer and fireman; the second, of the seven freight cars intended to be run upon the spur track, upon which was the conductor; and the third, of the remaining part of the train, under charge of a brakeman. In other words, it was intended to make a flying switch, and by that means to get the second section of the train upon the spur track, leaving the first and third sections upon the main line. The only person upon the second section was the conductor, who testified that he pulled the pin between the first and second sections, and then went to the rear end of the first car of the second section, where the brake wheel and rod were placed.

It further appears that the plaintiff was playing with two other children near the residence of a Mr. Taft, when they heard the whistle announcing the coming of the train; that it was proposed that they put some pins upon the rails, in order that they might be flattened out by the cars passing over the same; that each of the children put pins upon the rails at a point within the boundaries of Pine street as defined upon the town plat, and then ran into some bushes near the track, and awaited the coming of the train; that, after the first section of the train had passed by, the plaintiff ran down upon the track for the purpose of getting his pins, and while stooping down for that purpose he was struck by the second section, and badly injured. The plaintiff testified that when the engine with the cars attached thereto went by he supposed that the entire train had passed, and

that he did not know of the approach of the other cars. The conductor testified that he did not see the plaintiff, nor know that he was upon the track, until after the accident had happened. The front brakeman, who had gone to turn the switch at the spur track, testified that he saw the plaintiff running in upon the track, and that he gave a signal to the engineer, who blew the whistle, giving the call for brakes, and thereupon the conductor commenced setting brakes upon the second section. Upon the close of the evidence the defendant moved the court to direct the jury to return a verdict for the company on the grounds that there was no evidence of negligence on part of the defendant, and that, even if there was, the testimony showed that the accident resulted from the sudden and unexpected act of the plaintiff in running upon the track after the first section of the train had passed. This motion was overruled, and the case was sent to the jury, which found in favor of the plaintiff.

The first error assigned is based upon the admission in evidence of the plat of the town of Mazeppa, over the objection that the width and extent of some of the streets and lots were not given, and that the acknowledgment was not in accordance with the requirements of the statute of Minnesota in force at the time of the adoption of the plat. The trial court ruled that the plat did not conform to the statutory requirements, but that it was admissible, with the other evidence introduced, for the purpose of showing that in fact there was a public highway or crossing at the point where the accident happened. Counsel have very fully discussed the requirements of statutory and common-law dedications of streets, but, in our judgment, it is not necessary to enter upon a consideration of these questions in determining the point presented by the assignments of error based upon the admission of this plat in evidence. It was certainly entirely proper, and, indeed, necessary, for the plaintiff to prove that the place where the accident happened was within the limits of the town of Mazeppa, and to show the proximity of houses and ways used by the people of the village, in order to enable the jury to determine the amount of caution and watchfulness that the parties in charge of the train were required to exercise when they made the flying switch which resulted in the accident in question. If no plat of the town had ever been prepared, but lots had been sold and houses built, and traveled ways had been established by common use, and thus in fact a village had been created, it would have been open to the plaintiff to have proved such facts; and if, in fact, a village did exist, the railway company, in the running of its trains through such village, would be bound to use all the care and caution which the actual situation required. So, if a plat of the town had been prepared, and, without acknowledging or recording the same in accordance with the state statute, the owner of the realty had sold lots abutting on the streets as marked upon the plat, and the village had been built up with reference to such plat, and the railway company had taken deeds of its right of way with reference to the lots and blocks described on the plat, certainly such plat would be admissible, with other evidence, as tending to prove not only that a village did in fact exist, but as tending to show the location and extent of the highways

or streets included within the town limits. It is well settled that if the owner of land makes a plat thereof, or a survey defining lots, streets, and alleys, and sells lots with reference to such plat or survey, he will be held thereby to have dedicated the land to the purposes named. U. S. v. City of Chicago, 7 How. 185--195; Dill. Mun. Corp. § 640; Hurley v. Boom Co., 34 Minn. 147, 24 N. W. Rep. 917. Under any view that can be taken of the issues in this case, it was proper for the plaintiff to prove the fact that the town of Mazeppa was laid out into streets, blocks, and lots by the owner of the realty; and what better evidence existed of such fact than proof of the execution of a plat of the town, accompanied by evidence showing that lots had been sold with reference to such plat, thereby proving that, although the plat might not, in all particulars, conform to the requirements of the state statute, nevertheless it was, in fact, the plat which the original owners of the realty, and the purchasers from them, including the railway company, recognized as being the plat which controlled the laying out and building up of the town?

It is next assigned as error that the trial court refused to instruct the jury to return a verdict for the defendant upon a motion made to that effect at the close of the evidence. In support of the motion it was urged by counsel for the railway company that there was no evidence showing negligence on part of the defendant, and that, even if there was fault on part of the company, it was not the proximate cause of the accident, which must be attributed to the unexpected act of the plaintiff in running upon the track. The undisputed evidence in the case shows that, after entering the limits of the village, the train was cut into three sections, for the purpose of making a flying switch; and the second section consisting of seven cars, going along a down grade, was left in charge of one person, who, according to his own testimony, stood, not at the front end of the section, where his view would have been unobstructed, but at the rear end of the first car, and in such a position that he did not see the plaintiff when he came upon the track, although the front brakeman at the switch, the express messenger, and the rear brakeman on the third section saw him. It is evident that the conductor was in such a position that he could not see the track in front of the section on which he was placed, or that he did not watch for persons coming on the track; and either state of facts would be evidence of negligence. When the train was severed into three sections, and these were sent along the track separately, it was certainly the duty of the company to have each section under reasonable control, and to keep a proper lookout, to prevent accidents in connection with each section. If the evidence had shown that, after cutting the train into sections, the first one, with the engine attached, had been started down the grade towards the depot, and the engineer and fireman had gone to the rear end of the engine, and had thus permitted the section to move along through the village without any proper lookout being kept, certainly it could not be claimed that the company had exercised the care demanded of it under such circumstances. In fact, this was what was done with the second section, for, as already stated, the only person upon this section was the conductor, and he was not at the front end thereof,

where he could exercise a proper lookout, and give warning of the coming of the cars to persons who might be approaching the track. It is entirely probable that, if the conductor had been at the front end of the second section, where he could have seen the plaintiff as he came towards the track, by calling out he might have warned the plaintiff in time to have prevented the accident. The fact that the brake was at the rear end of the car, and for that reason the conductor was at that end of the car, does not excuse the company from the charge of negligence in this particular; for, if the conductor could not properly attend the brakes, and at the same time exercise a proper lookout, then the company should have had another employe on this section. It is self-evident that one person could not attend to the brakes upon seven cars, and at the same time be in a position where he could watch the track, and give proper warning of the coming of the cars. There was certainly, therefore, evidence tending to show a failure to exercise proper care in the manner in which the train was handled in passing through that part of the town of Mazeppa where the accident happened, and which demanded that this issue of negligence be submitted to the jury. The dangers that attend the cutting of a train into several sections, and moving the same along the track in the mode adopted in the present case, are well known, and so many accidents have been caused thereby that the courts have been compelled to condemn the practice unless great caution is exercised to prevent injury to persons who may be about to cross the track. Brown v. Railroad Co., 32 N. Y. 597; Butler v. Railway Co., 28 Wis. 488; Railroad Co. v. Schmidt, 126 Ind. 290, 25 N. E. Rep. 149, and 26 N. E. Rep. 45; Railroad Co. v. Converse, 139 U. S. 469–471, 11 Sup. Ct. Rep. 569.

There being evidence tending to show negligence on part of the company, it was the duty of the trial court to overrule, as it did, the motion directing the return of a verdict for the defendant, and to submit the issue of negligence to the jury; and the several assignments of error based upon the action of the court in this particular are wholly without merit.

In the charge to the jury the trial court very fully and clearly stated the rule of law applicable to the facts upon the question of negligence on part of the defendant, and the only exception taken thereto was to that part of the charge wherein the court stated that, although the plaintiff might have been at play on a street, that would not make him a trespasser; the contention of the counsel for the railway company being that "it was not a question of what his right was to be or play upon a public street but what was his right to play on the railroad track, at a place of the character shown by the evidence. The charge was, therefore, to the effect—and a jury would so understand it—that the plaintiff had a right to play upon the railroad track, because such track happened to cross what was claimed as a public street." Taking the charge as a whole, we do not think the jury would put the construction upon it which counsel seek to do in their argument. The jury were instructed that children are entitled to the use of streets just the same as grown people, and that when upon them they must exercise proper care. The court did not charge,

nor would the jury necessarily so infer, that children had the right to make a playground of the railway track. It is certainly not illegal for children or adults to engage in what may be termed "play;" and if, while so engaged, need arises for going upon a street, they are justified in so doing, provided due care is used in guarding against accidents. Thus, if persons engage in playing ball at a place where such sport is permitted, and the ball happens to be thrown across or into a public street, certainly any one of the players, whether a child or adult, may go upon the street for the purpose of getting the ball, without being deemed a trespasser. The evidence in this case shows that the larger part of the persons who crossed the railway in the vicinity of the place where this accident happened did so for purposes of amusement; that is, for gathering wild flowers, or for fishing or swimming in the Zumbro river. The right to pass along or across streets or other highways is certainly not limited to those uses which pertain to business, as distinguished from pleasure or amusement, and therefore the mere fact that a person is engaged in what is called "play" at the time he goes upon a street does not necessarily make him a trespasser thereon. In this case the defendant company is seeking to avoid the charge of negligence in the manner in which the train was handled by claiming, in effect, that the plaintiff was a trespasser, to whom it was under no obligation, because, while engaged in play with his companions, the plaintiff ran upon the street; and the effect of the charge of the court was that there was no law forbidding the plaintiff from so doing, provided he exercised due care and watchfulness; and we do not find error in this ruling. Upon the question of contributory negligence the court fully instructed the jury, and no exceptions were taken to this part of the charge, and in the argument of the cause counsel for the defendant company admitted that they were concluded on that question before this court by the verdict of the jury.

The judgment of the circuit court is therefore affirmed.