GARLICH v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. August 3, 1904.)

No. 2,040.

1. WITNESSES—CROSS-EXAMINATION—SCOPE.

It is no objection to the cross-examination of a plaintiff's witness that it discloses facts tending to constitute a defense, where such facts relate directly to matters about which he testified on his direct examination.

2. EVIDENCE—PRIVATE STATUTES—NECESSITY OF PLEADING.

Neither a private statute nor a city ordinance is admissible in evidence to establish a defendant's negligence in the running of a railroad train, unless pleaded.

3. RAILROADS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.

The law recognizes the track of an operated railroad as a place of danger, of which danger a view of the track conveys notice; and when a person goes upon such track, or so near it as to be within the overhang of the cars or engine, ordinary care requires that he be alert in the use of his senses of sight and hearing to guard himself from harm, and no reliance on the exercise of care by persons in control of trains will excuse

his failure to exercise such care. If the use of these senses is interfered with by obstructions or by noises, ordinary reasonable care calls for proportionately increased vigilance.

**4. SAME—FAILURE TO LOOK AND LISTEN.**

Plaintiff, without occasion therefor, was walking near a city station in the space between railroad tracks and a river bank, used as a pathway, and ranging in width from 5 to 25 feet. A freight train was moving in the opposite direction on the second track from him, making the usual noise; and, after looking back along the nearest track, which could be seen for about 500 feet, and seeing no train thereon, plaintiff walked on about 150 feet, without again looking back, when he was struck and injured by the end of the pilot beam on the engine of one of defendant's trains which came from behind him. The space between the track and river bank was there 11 feet wide, and plaintiff was walking at a safe distance from the track until just before he was struck, when he made a side step toward the track. *Held* that, without regard to the question of defendant's negligence, plaintiff was guilty of such contributory negligence as precluded his recovery for the injury as matter of law.

**5. SAME—VIOLATION OF SPEED ORDINANCE.**

The fact that a railroad train at the time it struck and injured a plaintiff was being run in violation of a city ordinance limiting the speed of trains, while it may be evidence of the company's negligence, does not affect the defense of contributory negligence in an action for the injury, the plaintiff having no right to omit the exercise of ordinary and reasonable care for his own protection in reliance on such ordinance.

In Error to the Circuit Court of the United States for the District of Minnesota.

Entering the city of St. Paul from the west, the roadbed and tracks, side by side, and near together, of the Chicago, Milwaukee & St. Paul Railway and the Chicago, St. Paul, Minneapolis & Omaha Railway pass along the bank of the Mississippi river upon a narrow bench of land between the bank of the river (which is 10 feet or more above the water) and the foot of a high, steep bluff reaching the general level of the city in that vicinity. This narrow bench of land extends from some distance east of the line of Robert street westward beyond the line of Wabasha street, and both of said streets are continued as thoroughfares upon bridges from the top of the bluff, over, and more than 30 feet above, said railroad tracks, and across the river. The whole of this narrow bench of land between the line of the said two streets and for a distance on either side has been for many years, and still is, occupied by said railroad tracks, and used for railroad purposes, and not for road vehicles. But between the margin of the river bank and the nearest railroad track is a narrow strip of land varying from about 5 feet in width near the Wabasha Street Bridge to 25 feet in width near the Robert Street Bridge, used as a footpath by persons having occasion to pass there. When the city was platted, long before there were railroads in the country, this narrow bench was platted as a public street or levee, and was so used for a time, but was long ago abandoned to the use of railroads. On August 14, 1902, the plaintiff, without any special occasion or object, walked westward from the Union Depot, along the river bank and upon said pathway beyond the Robert Street Bridge and nearly to the Wabasha Street Bridge, where he turned, and retraced his way along the same path. A freight train going westward was then passing with its usual noise on the second track from him. Plaintiff turned, and looked back along the track nearest him, which was visible for about 500 feet, when further view was cut off by a curve and obstructions. Seeing no train or engine on this track, plaintiff proceeded eastward on said path at an ordinary walk for about 50 paces, when, having come within about 100 feet of the Robert Street Bridge without having taken any further pre-

---

¶ 5. Effect of violation of statutes and ordinances regulating speed of trains, see note to Shatto v. Erie R. Co., 59 C. C. A. 5.
See Railroads, vol. 41, Cent. Dig. §§ 1313, 1315.

caution, at a place where said pathway was 11 feet wide, he was struck on the left side by the end of the pilot beam of defendant's engine, which, with a passenger train, was coming from the west on said nearest track at a speed of about 15 miles an hour; and was seriously injured. The engineer, who was called by plaintiff, testified that when he came around the curve and saw the plaintiff the latter was on the path 6 or 8 feet from the track, and that when the engine came near plaintiff made a side step towards the track, bringing himself so near that he was struck by the end of the pilot beam; and that when plaintiff, by such side-stepping, suddenly came dangerously near to said track, the engine had so nearly reached the place of collision that it could not be stopped before striking the plaintiff. No bell had been rung or whistle blown on the engine as it approached. There was no contradiction in the testimony, and at the close of plaintiff's evidence the defendant moved that the court direct the jury to render their verdict in favor of the defendant, on the ground that, even if the defendant was negligent, the plaintiff was guilty of such contributory negligence as barred his right to recover in the action. The court granted the motion, and by its direction such verdict was rendered.

C. N. Dohs and E. R. Wakefield (D. A. Haggard, on the brief), for plaintiff in error.

L. T. Chamberlain (C. W. Bunn, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

1. The cross-examination of the witness Root was not extended beyond the particular circumstances of the facts about which he had been examined by plaintiff's counsel. If the disclosure of such circumstances, explanatory of the very matters about which he had testified on his direct examination, also tended to establish a defense to the action, such tendency constituted no valid objection to the cross-examination. Resurrection Gold Min. Co. v. Fortune Gold Min. Co. (C. C. A.) 129 Fed. 668.

2. The Minnesota statute offered in evidence is a private act; and neither it nor the ordinances of the city of St. Paul, also offered in evidence, had been pleaded, and they were rightly excluded. 1 Chitty's Pl. 238; 20 Encyc. Pl. & Prac. 596, and notes; Gen. St. Minn. 1894, §§ 5251, 5252. Besides, this proposed evidence had no bearing on the question of contributory negligence, upon which the case was disposed of.

3. The other assignments of error challenge the ruling of the court that upon the uncontroverted facts shown by the evidence, the plaintiff was guilty of such contributory negligence, directly resulting in the injury which he sustained, as precluded all right of recovery, even though the defendant was chargeable with negligence which was also a proximate cause of the injury.

The ruling was right. The law recognizes the track of an operated railroad as a place of danger, of which danger a view of the track conveys notice; and that when a person goes upon such track, or so near as to be within the overhang of the cars or engine, ordinary care requires that he be alert in the use of his senses of sight and hearing to guard himself from harm. And no reliance on the exer-

cise of care by persons in control of the movement of trains or engines will excuse any lack of the exercise of such care by persons going upon such tracks. If the use of these senses is interfered with by obstructions or by noises, ordinary, reasonable care calls for proportionally increased vigilance. Blount v. Grand Trunk Ry. Co., 61 Fed. 375, 9 C. C. A. 526; Pyle v. Clark, 79 Fed. 744, 25 C. C. A. 190; C., St. P., M. & O. Ry. Co. v. Rossow, 117 Fed. 491, 54 C. C. A. 313; C. & N. W. Ry. Co. v. Andrews (C. C. A.) 130 Fed. 65. The three cases last cited were decided by this court, and pages of citations of cases from this court and all the courts of the country to the same effect might be added. In this case, if the path between the railroad tracks and the river was a dangerous place, the danger was obvious, and the risk was voluntarily and needlessly assumed by plaintiff, who went there for an idle stroll. When, after turning in his walk, he looked back along the nearest track, his view of it extended but a short distance, when it was cut off by a curve and obstructions. Yet, without looking again, or bestowing further attention to the situation, he walked along at an ordinary gait about 50 paces, or 150 feet; and, though the path was there 11 feet wide, just as the engine was nearly opposite him, he blundered, and came by a side step, from a safe distance away, so close to the track that he was immediately struck by the end of the pilot beam. That he was grossly negligent, and that his negligence was a proximate cause of his injury, is manifest.

Since the argument counsel have called our attention to the decision by the Supreme Court of Iowa of the case of Camp v. Chicago Great Western Ry. Co. (recently filed) 99 N. W. 735. An employé of the company, after clearing snow from a switch in the company's Marshalltown yard, started along the track to a toolhouse 182 feet distant; having looked back along the track without seeing any engine. When within 25 feet of the toolhouse, and walking on the ends of the ties, he was struck by an engine which came up on the track behind him faster than 6 miles an hour, which is the limit of speed fixed by a Marshalltown ordinance. Though the switchman had taken no other precaution, the conclusion was arrived at that he would have reached the toolhouse before being so overtaken had the engine not exceeded 6 miles an hour. The Iowa court held that the switchman had the right to rely confidently on the belief that no engine would be run on that track faster than the Marshalltown ordinance prescribed, and that reasonable care did not require that he should again look back, or walk beyond the reach of passing engines. We do not find this decision persuasive, or in harmony with the settled law on the subject. Such ordinances are intended to prevent collisions and accidents in urban communities. The limit of speed fixed is a designation by the municipal council of the degree of care which shall be exercised in the operation of railroads within the municipality. To exceed the rate of speed so fixed as proper and safe may be some evidence of negligence; but, as between the railroad company and a person injured or put in danger, it is unlawful only in the sense in which any act of negligence which injures or endangers another is unlawful. And the doctrine of contributory negligence is just as applicable to cases of negligence in

respect to ordained rates of speed as to any other species of negligence chargeable to a railroad company. In Pyle v. Clark, decided by this court, and already cited, the opinion states that the train which struck the plaintiff's team was running at about 15 miles an hour, in violation of a municipal ordinance which prohibited a speed of more than 8 miles an hour, yet the plaintiff was held guilty of contributory negligence, because, after looking along the track, he allowed a full minute to elapse before driving upon the track without again looking. And in Blount v. Grand Trunk Ry. Co., also above cited, gates at the crossing were established by law to warn travelers, but it was held that the fact that the gates were open when a train was approaching did not excuse a person crossing the tracks for failing to look and listen. The well-settled rule of law is that no reliance upon the exercise of care by a railroad company will excuse a lack of the exercise of proper care by a person going upon a railroad track, or so near as to be in danger from passing trains.

The only other case which we find that seems to hold that running faster than the rate of speed allowed by a municipal ordinance has any bearing upon the matter of contributory negligence is the case of Smith v. St. Paul City Ry. Co., 79 Minn. 254, 82 N. W. 577, where damages were recovered for running over and killing a dog by defendant's trolley car running 20 miles an hour, in violation of a city ordinance limiting the speed to 10 miles. The court conceded that ordinarily the motorman need not stop for dogs, who should care for themselves, and get out of the way of the car, yet held that the jury might properly determine whether, but for this improper rate of speed, in violation of the ordinance, the dog would not in that instance probably have escaped. Without further comment on these cases, it is sufficient to say that we adhere to the prior decisions of this court.

Affirmed.