## COLORADO & S. RY. CO. v. TUCKER.

(Circuit Court of Appeals, Eighth Circuit. October 11, 1909.)

### No. 2,762.

RAILROADS (§ 333*)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—DUTY TO STOP, LOOK, AND LISTEN.

A man who in the daytime walked upon a railroad crossing immediately in the way of an engine, which was backing toward the crossing at a speed of five or six miles an hour, and which was in plain sight as it approached, with nothing to obstruct his view, is as matter of law chargeable with contributory negligence, which precludes recovery for his death so caused.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1080–1083; Dec. Dig. § 333.*]

In Error to the Circuit Court of the United States for the District of Wyoming.

Action by Lola D. Tucker, administratrix, against the Colorado & Southern Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

O. L. Dines (Tyson S. Dines, Elmer E. Whitted, and Charles W. Burdick, on the brief), for plaintiff in error.

William B. Ross, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge. John McNamara was run over and killed by an engine of the railway company at a railroad crossing of a street in the city of Cheyenne, Wyo. His administratrix sued the company and recovered judgment. There was a defense of contributory negligence. At the close of the evidence the company moved for a directed verdict, and the denial thereof by the trial court presents the only question we find it necessary to consider.

There were two theories as to the place where deceased got upon the track and what he was doing there; but, as the verdict of the jury was against the company, we shall adopt that of the plaintiff, and also assume there was negligence in failing to give proper signals of the approach of the engine. Two side tracks, and a main line between them, running in a northerly and southerly direction, crossed the city street substantially at right angles. They were a part of the yards of the company. About four minutes before the accident the engine went northward on the west side track to a point 75 or 100 feet north of the street, and after coupling to some cars backed with them towards the crossing. The deceased approached the crossing from the northwest on a cross-lot path, and, though no one saw him step upon the track, it is quite clear that when he did so he was instantly struck by the tender of the engine and run over. No witness testified whether he looked and listened just before stepping on the track, so the presumption of care which arises from the natural instinct of self-preservation is invoked in support of the judgment. But those who saw him as he neared the immediate vicinity of the crossing said he was paying no attention to the engine and cars, and there was nothing whatever to obstruct his view northward along the track for at least a block. The engine and cars were approaching slowly, five or six miles an hour, and were in plain view. It was between 1 and 2 o'clock of a January afternoon, and though the snow upon the ground may have required careful attention in walking, and there was some wind, every witness whose view was not obstructed by fixed physical objects, and who looked, saw the engine and cars at a greater distance than deceased was from them. One witness who saw them plainly was more than 200 feet away. Those who observed the deceased as he neared the crossing noticed no effort on his part to detect the danger. The conclusion is unavoidable that he did not perform his duty before going on the track; for, had he looked, he could not have failed to see, and he was complete master of his movements.

There is no merit in the argument that the engine was a road engine, as distinguished from the type specially designed for switching service, that deceased saw it headed north and moving in that direction, that he had reason to believe it would continue in its course, and that he was therefore lulled into a sense of safety. All the inferences that

might reasonably be drawn from such premises will not, standing alone, excuse a pedestrian from adopting those simple precautions for his safety which experience has shown to be so necessary and which the law has imposed as a duty. We think the case is controlled by the many others of like character decided by this court: Railway Co. v. Cundieff (C. C. A.) 171 Fed. 319; Railway Co. v. Williams (C. C. A.) 170 Fed. 1020; Railroad Co. v. Munger (C. C. A.) 168 Fed. 690; Tramway Co. v. Cobb, 164 Fed. 41, 90 C. C. A. 459; Railway Co. v. Stepp et al., 164 Fed. 785, 90 C. C. A. 431; Springer v. Railway Co., 161 Fed. 801, 88 C. C. A. 619; Railway Co. v. Donovan, 160 Fed. 826, 87 C. C. A. 600; Rich v. Railway Co., 149 Fed. 79, 78 C. C. A. 663; Railway Co. v. Clarkson, 147 Fed. 397, 77 C. C. A. 575; Railroad Co. v. Chapman, 140 Fed. 129, 71 C. C. A. 523; Railway Co. v. Andrews, 130 Fed. 65, 64 C. C. A. 399; Railway Co. v. Hardy, 94 Fed. 294, 37 C. C. A. 359; Garner v. Trumbull, Receiver, 94 Fed. 321, 36 C. C. A. 361; Railway Co. v. Caulfield, 63 Fed. 396, 11 C. C. A. 552; Railroad Co. v. Ives, 63 Fed. 791, 11 C. C. A. 433; Railway Co. v. McArthur, 53 Fed. 464, 3 C. C. A. 594.

The judgment is reversed, and the cause remanded for a new trial.