(38 South. 166.)

No. 15,353.

GILLIAM v. TEXAS & P. RY. CO.*

(Jan. 30, 1905.)

RAILROADS—INJURY TO PERSON ON TRACK—
     TRESPASSER—NEGLIGENCE.

1. Plaintiff claims damages for the death of James Gilliam, alleged to have been caused by the negligence of the defendant company. He was killed by the forward open car of a train operated by defendant's employés. At half past 8 o'clock on a dark night he was asleep, in an intoxicated condition, on defendant's private roadbed, between the tracks of the road, and in the open country. The train was being pushed northward by a locomotive placed at its rear end, and facing south. The train had a small red light attached to the rear of the engine, and three small railroad lanterns in the hands of men stationed upon the flat cars (in front as the train was running) of the engine. The negligence charged was that the company should have had on the forward moving flat car a light similar to the headlights usually placed in front

———

*Rehearing denied March 13, 1905.

of locomotives, enabling brakemen on the flat cars to discern objects on the track in time to avert injury. *Held*, that plaintiff could not successfully urge as negligence the company's failure to take such unusual precautions for the protection of the deceased, a trespasser upon its tracks. Smith v. Railroad, 17 South. 302, 47 La. Ann. 833.

2. Trespassers have not the right to exact from railroad companies the same care for their safety as can their employés and their passengers.

3. Defendants have been repeatedly relieved from the charge of negligence where the act done or omitted to be done was one which the party had no reasonable ground to know or believe, or could not reasonably be held to foresee in the light of the attending circumstances, or which he did not know, would carry with it injury as its natural and probable consequence.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by Ida Gilliam against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed.

Wise, Randolph & Rendall, for appellant. Thatcher & Welsh (Murff & Webb, of counsel), for appellee.

### Statement of the Case.

NICHOLLS, J. The plaintiff sues in her individual right as widow in community with James Gilliam, deceased, and as natural tutrix of their minor child, Mattie Bell Gilliam; she praying for judgment in favor of herself individually for $10,000, and for judgment in favor of said minor for $15,000.

The demand is based upon the allegations: That on or about the night of July 2, 1901, her husband was walking along the track of said defendant railroad company, in the town of Belcher, Caddo parish, La., which track was constantly used by pedestrians with the knowledge and consent of defendant company, and that one of the trains of said company ran over him, inflicting injuries of which he died. That said decedent was killed at a point on defendant's line at Belcher Station, Caddo parish, La., where pedestrians had been for a long time accustomed to walk with the knowledge and acquiescence of the said railroad company. That he was killed at a point where the trains of defendant were required to be under absolute control, as it was in a populous village, where the defendant company had a depot, and where its trains were required to give signals for the crossing and station, at which they are required to stop. That the train which ran over him was not properly equipped and operated; running at a high rate of speed through the town; giving no signals for the station or crossing near the point where decedent was killed. That the locomotive was in the rear of the train, pushing it rapidly along the track, without any headlight on the caboose, which was in front of the train. She shows that the track was straight, and, had the train been equipped with a headlight, and its operators on the lookout, and the proper signals given, that the injury and death of her husband would have been averted. That said company was guilty of gross negligence and wanton disregard of its duties to the public in backing said train rapidly on its road, at a point where pedestrians constantly used its track with the knowledge of said company, without giving signals of its approach, and without having said train equipped with a headlight, and its operators on the lookout.

That decedent was not in fault, but that his death was due to the sole fault of defendant. That her husband's body was torn and mangled, and that he suffered excruciating pains for several minutes, until relieved by death. That she has been damaged in the sum of $10,000 for the loss of his comfort and support, and that the minor, M. B. Gilliam, has been damaged in the sum of $5,000 for the pain and suffering of her father, and in the further sum of $10,000 for the loss

of support. Defendant, after pleading a general denial, averred that if the plaintiff's husband was killed through the fault or negligence of its employés, which it specially denied, he was guilty of contributory negligence, and cannot recover.

The jury rendered a verdict against the defendant, and in favor of the plaintiff individually and as tutrix of the minor, Mattie Bell Gilliam, for $16,000, and judgment was rendered accordingly. Defendant appealed.

### Opinion.

While plaintiff's husband was asleep, in a state of intoxication, between the rails of the tracks upon defendant's right of way, about half past 8 o'clock on a dark night, he was killed by the forward moving flat car of a railroad train propelled northward by an engine, which was placed at the south end of the train, itself facing southward. Though plaintiff may have been excusable in walking upon defendant's right of way without its express consent, he was utterly without justification in having gone upon it at the time and in the condition in which he was, and in being upon it at the time and in the condition he was when he was killed. Assuming that defendant may have been guilty of some negligence, in having failed to take precautions by which his life might have been saved, it is beyond dispute that he was guilty of gross contributory negligence. The plaintiff, to recover in this case, would have to establish a condition of things such as would render the defendant liable to her in damages for her husband's death, in spite of his being as greatly in fault as he was himself.

Her counsel maintains that she has done so. He urges that if a railroad company, in running its trains at night, instead of placing the locomotives which are to move the cars in front of them, so as to pull them, places them at the rear end of the trains, facing away from them, so as to push the cars to the front, it is their legal duty to place a light upon the leading cars—lights such as the locomotives should have had upon them, had they been in front, enabling the brakemen or other employés upon those leading cars by means of those lights to discover objects upon the tracks in time to stop the train and avert injury. Counsel say that the correctness of that proposition is supported by the decision of the Supreme Court of Tennessee in the matter of Little Rock & Memphis Railway Co. v. Wilson, reported in 16 S. W. 613, 13 L. R. A. 364, 25 Am. St. Rep. 693; by the decision of the Supreme Court of Missouri in Whalen v. Chicago & N. W. Ry. Co., 75 Mo. 654[1]; Chamberlain v. Missouri Pacific Ry. Co. (Mo.) 33 S. W. 437; and in that of the Supreme Court of Louisiana in Downing v. Railway Co., 104 La. 508, 29 South. 207.

The syllabus of the first-mentioned of these cases reads as follows:

"The duty to keep 'a person upon the locomotive always upon the lookout ahead,' imposed upon every railroad company by Mill. & V. Code, § 1298, in default of which it is by section 1299 made responsible for all damages from accident or collision, is absolute, and renders the company liable for all accidents happening while it is running a train with the locomotive at the rear, whether it has a lookout upon the front car or not."

The action was one brought to recover damages for personal injuries alleged to have resulted from defendant's failure to comply with statutory requirements as to lookouts. Judgment was rendered in the trial court in favor of the plaintiff, and on appeal the judgment was affirmed. The facts of the case were that injuries were received by Wilson while drunk and asleep on the defendant's tracks at a point about 30 yards of Market street, in Memphis, Tenn. The accident occurred during the night, and while the employés of the company were, by means of an engine in the rear of a train of

---

[1] Proper citation is 75 Wis. 654, 44 N. W. 849.

nine cars, pushing the train into the company's yard, south of Market street. As we understand the case, the company was charged with negligence on two grounds: (1) Because it did not have the headlight in front upon the locomotive, as required by the terms of the statute; and, second, because it had failed to keep a lookout at some place on the front car of the train, or on the ground, either in front of the car or on the side, and so near the road that he could command a view of the roadbed in front of the moving train. The trial court was of the opinion that the requirements of the statute as to having a headlight in front on the locomotive did not apply to the case, as the locomotive was not in front of, but behind. It held that the defendant was legally responsible, however, on the second ground of complaint assigned and set up; that it was guilty of the negligence therein charged, and that this negligence proximately caused the injury; that, had there been a lookout on the leading car, on the ground, either in front of or on the side of the train, a lookout so placed could have discovered Wilson in time to have prevented the accident, notwithstanding Wilson's negligence in being there, and so the company was responsible for failure to take this precaution, which, it held, evidenced a lack of reasonable care and prudence. The court considered plaintiff's negligence in mitigation of damages, and recovery for only $1,500 was allowed.

The appellate court held that the trial court erred in holding that the provisions of the statute requiring a headlight to be placed upon the locomotive were dispensed with because in that particular case the locomotive was not in front of, but behind, the train; that, notwithstanding that fact, it was the duty of the company to have had the headlight upon the locomotive; that, the company having failed to comply with the statutory requirements, Wilson, notwithstanding his negligence, could recover damages, his negli-

gence under such circumstances being considered in mitigation of, but not in bar of, the action, as might have been, had the company been charged with negligence under its common-law obligations; that the rule of law announced by the trial court being, under the actual circumstances of the case, correct, it was immaterial upon what consideration this was done.

We do not think that the decision just referred to is determinative of the one before us. There is no special statute in Louisiana, for the violation of whose requirements the railroad company would be held responsible in damages, as was held in the Wilson Case. Counsel say that the Tennessee statute and the Louisiana jurisprudence are the same in principle, but there is error in that statement. This court has never gone to the extent claimed. The syllabus in the Chamberlain Case declares that where a train is running through a populous neighborhood, just outside of the city limits, where laborers have for years been accustomed to use the tracks in going to their work, and the employés on the train see, or by the exercise of ordinary care may see, a person on the track in time to avoid a collision, but fail to use such care, the company will be liable, though the person injured is guilty of contributory negligence.

The decision leaves as an open question the circumstances under which a railroad company, by the exercise of ordinary care, ought to see objects upon its track. The court in that case defined "ordinary care" as such care as an ordinarily prudent man would use under the same or similar circumstances.

The negligence of the defendant which is charged against it is that it failed to place a light on the forward moving car, such as would enable a brakeman standing at the end of that car to see objects in front of the track in sufficient time to stop the train and to avert threatened injury. The testimony

shows that there was a small light attached to the rear of the engine or tender; that there were men standing in front of the engine, upon the flat cars, each provided with railroad lanterns; one of these men was standing upon the forward car, one upon the car behind the tender, and the third on the middle car between the two. The testimony further shows that lights such as are placed in front of locomotives, and are known as "headlights," are never placed upon the car which is in front when the cars are being pushed forward by a locomotive placed at the rear of the train. The question submitted to us for decision is whether, the defendant was guilty of negligence in the premises, as charged. We have given the meaning of that word as defined in the Chamberlain Case (Mo.) 33 S. W. 437. It is also defined in Summers v. Crescent City Railroad Company, 34 La. Ann. 147, 44 Am. Rep. 419, and Clerc v. Railroad, 107 La. 376, 377, 31 South. 886, 90 Am. St. Rep. 319, and authorities cited.

In the latter case this court said:

"We have repeatedly relieved defendants from the charge of negligence where the act done was one which the party had no reasonable ground to know or believe or could not reasonably be held to foresee, in the light of attending circumstances, or which he did not know, would carry with it injury, as its natural and probable sequence."

In Henry v. Lumber Co., 48 La. Ann. 950, 20 South. 221, the parents of a young man brought suit against the defendant company, in whose employment he was, for damages for having caused the death of their son by its negligence. The plaintiffs asserted that he was ordered by the foreman of the company to take hold of a certain belt while he (the foreman) laid it, while the shaft and other machinery were in motion, revolving at a highly dangerous rate of speed; that the deceased was ignorant of the dangers, and obeyed; that, the belt being in bad condition, it caught on the shaft, and was twisted around it while rapidly revolving, throwing deceased with great violence against the roof, in consequence of the space between the shaft and the roof being so short as not to permit the passage of the body without striking. Plaintiffs charged that the company was guilty of fault and negligence in having that factory constructed in a defective, dangerous, and unskilled manner; that there was not sufficient space between the floor and the shaft.

Referring to that charge, this court said:

"It could scarcely be expected that those who constructed the factory should have done so with reference to the possibility of a human body being carried up and around a revolving shaft, and that they should have left a larger space between the roof and the shaft than they did, for the purpose of enabling a body to pass without being struck. As no one would anticipate that the belt would slip off from the upper pulley as it did, and that, just as it did so, a heavy weight should be suddenly thrown upon it, no one would guard against that 'special contingency.' "

The court, considering that the omission to provide precautions against such remote possibilities was not negligence, affirmed the judgment of the trial court in favor of the defendant.

In the case at bar, plaintiff claims that it was the duty of the defendant company to have taken unusual steps to secure against danger not only to trespassers upon their right of way, but to trespassers lying asleep between their tracks, in a state of intoxication, on a dark night. While the situation at some particular place on the right of way might have been such as to have given reason for the company employés to anticipate finding trespassers at that place, we do not think that there would be reason to anticipate that such trespassers would be lying drunk and helpless between the tracks. Such a situation would be exceptional.

We do not think that the widow and child of the deceased could reasonably require that the defendant should have taken greater precautions than it did for his protection. Smith v. Railroad Company, 47 La. Ann. 833, 17 South. 302. Had he been trespassing

upon the right of way, but not drunk and asleep, the red light at the back of the engine, and the white lanterns in the hands of the men upon the flat cars, and the flashings of light from the opening of the furnace, coupled with the noise of the running train, would have warned him of the approaching train, and he could doubtless have saved himself by going to the edge of the embankment, or, if necessary, going carefully down its sides. Prompt steps were taken to stop the train as soon as the position of the deceased was seen, and it was stopped as quickly as possible to avoid the accident. Trespassers have not the right to exact from railroad companies the same care for their safety as can their employés and their passengers. Reary v. Railway Co., 45 La. Ann. 32, 3 South. 390, 8 Am. St. Rep. 497; O'Connor v. Railroad Co., 44 La. Ann. 339, 10 South. 678.

The accident in this case did not occur in a city or a town, or upon a street, but in the country, on the company's right of way.

Plaintiff's counsel refers in his brief to the decision of the court in McClanahan v. Vicksburg, Shreveport & Pacific Railway Co., 111 La. 781, 35 South. 902. The facts of that case differ materially from those in the one before us. There was no question in the McClanahan Case as to the duty of the defendant company to have furnished light sufficient to see objects upon the tracks ahead. The accident occurred in the daytime, and nature herself had furnished the light. The negligence of the company consisted in the fact that its employés did not make use of their senses to see, although there was plenty of light to do so. We have omitted to mention that the counsel was mistaken in his citation of Whalen v. Chicago & Northwestern Railway Co.

We have examined the 75th Missouri Reports, and do not find the case mentioned in that book. We do not know what its facts were.

We are of the opinion that the verdict of the jury and the judgment of the court herein appealed from are erroneous.

For the reasons herein assigned, the verdict of the jury and the judgment appealed from are hereby annulled, avoided, and reversed, and plaintiff's demand is rejected and the suit dismissed.

PROVOSTY, J., not having heard the argument, takes no part.