(80 South. 198)

No. 22961.

KRAEMER v. LOUISVILLE &' N. R. CO.

(Nov. 4, 1918.   Rehearing Denied Dec. 2, 1918.)

*(Syllabus by Editorial Staff.)*

1. RAILROADS ⬡═══385 — PERSONAL INJURY —DUE CARE—PRESUMPTION.

A harbor police officer on defendant's tracks at a public place on which the city had granted franchises to defendant, in pursuance of his duty, had a right to presume that no train would approach without a bright light and a lookout on its forward end.

2. RAILROADS ⬡═══312(11)—PERSONAL INJURY—SAFEGUARDS.

Though backing of a train over city street crossings at night is not in itself negligence rendering railroad liable for any resulting injury, it is sufficiently dangerous to public to require all reasonable safeguards, such as a bright light on forward end of train and a lookout there in position to warn a person of danger.

3. RAILROADS ⬡═══398(2)—INJURY TO PERSON ON TRACK—NEGLIGENCE—EVIDENCE.

In action by harbor police officer for injury when struck by train in the nighttime, charging negligence in its having no light, or not a bright light nor a lookout on forward end of backing train, and in not warning of its approach, evidence *held* to sustain a judgment for plaintiff.

4. DAMAGES   ⬡═══132(12)—PERSONAL INJURY —EXCESSIVE DAMAGES.

An award of $10,875 to harbor policeman whose left hand was cut off near the wrist, who sustained a fracture of the bones of his shoulder and right leg and of six ribs and was severely cut and bruised about the face and head and body, was not excessive, or manifestly insufficient in amount.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Frank Kraemer against the Louisville & Nashville Railroad Company. Verdict and judgment for plaintiff, and defendant appeals, and plaintiff, answering the appeal, asks that the judgment be increased to the amount sued for. Affirmed.

Denegre, Leovy & Chaffe, of New Orleans, for appellant.

E. M. Stafford, Daniel Wendling, and Henry W. Robinson, all of New Orleans, for appellee.

O'NIELL, J.  The defendant appeals from a verdict and judgment for the plaintiff for $10,875 damages for personal injuries. He was run over by the defendant's railroad train, while he was on duty as a police officer in the city of New Orleans, and was very seriously injured. He sued for $30,000, and in answer to the appeal asks that the judgment be increased to that sum.

The plaintiff was the only witness to the accident. It happened at a late hour at night. The train, consisting of 12 cars, the forward car being a tank car, was being shoved by a locomotive along the space occupied by the tracks of several railroad companies immediately behind the dock board roadway near the river front. The charge of negligence is that there was no light, or not a bright light, nor a lookout, on the forward end of the train, nor any alarm given

of the approach of the train. The plaintiff avers that the accident happened on the St. Louis street crossing, and that he stopped, looked and listened for an approaching train before attempting to cross the railroad track, but failed to see the train because there was no light nor other warning and the train was not making noise enough to attract his attention. He testified that he was crossing the tracks diagonally, at the intersection of the street, on his way to arrest some negroes, whom he believed to be thieves, loitering about the cars of the public belt railroad.

The defense is that the accident happened, not on the street crossing, but at a point about 120 feet above the crossing, in the defendant's yard, and on its right of way, where the plaintiff had no right to be, and where the train crew had no reason to expect a man to be; that the train was moving at a very slow speed, only 4 or 5 miles an hour, with a light on the front end, that was easily visible, a man carrying a light on the forward car, and another carrying a light on the next car, which lights were also visible in front of the train; that the whistle on the locomotive was sounded just before the forward end of the train came up to St. Louis street, and the men on the forward end of the train were whistling to give warning of the approach of the train. Denying that there was negligence on the part of the train crew, the defendant pleaded that, if there was any such negligence, the plaintiff was guilty of contributory negligence in going along or upon the railroad track without having stopped, looked or listened, and that his negligence was the direct cause of the accident.

[1-3] The evidence relied upon by the defendant to contradict the plaintiff's statement that the accident happened at the upper edge of the street crossing is that the officer's hat, club and flash light were found at a point about 40 or 60 feet above the crossing, and that the blood streaks on the ground extended from a point 124 feet above the crossing to the place where the injured man was found, after the train had passed over him. The man who found the officer's hat, club and flash light after the accident could not be located at the time of the trial, but he had given two statements, which were introduced in evidence, in one of which he said that the place where he found the articles was 40 feet, and in the other that it was 60 feet, above the street crossing. One of the surgeons who attended the injured man testified that he might have been dragged 124 feet before spilling blood on the ground; and we assume that the hat, club and flash light were knocked or carried some distance—possibly 40 or 60 feet—from the place where the man was struck by the train. Hence there is no contradiction of the plaintiff's statement that he was at the upper side of the street crossing when the train struck him. To assume, however, that he had, while his attention was on the thieves whom he was going to arrest, moved 40 or 60 feet along the railroad track beyond the street crossing, would not affect our judgment in this case. Although the place where the injured man was found was not a thoroughfare for pedestrians, it was not in a railroad yard. It was a public place, on which the city had granted franchises to the railroad companies for their tracks; and the plaintiff's duties as a police officer in what is called the harbor precinct required his going across and upon the railroad tracks at any and all hours of the night. His being on the railroad track did not subject him to the danger of being run over by a train properly equipped with a light or lookout on its forward end. And he had a right to presume that no train would approach without a bright light and a lookout on its forward end.

A rule of the railroad company required a white or bright light on the for-

ward end of the train. There was only a red light on the forward end of this train, which did not shed any ray of light along the ground ahead of the train. It appears that red lights are used generally to mark a stationary danger, and also on the rear end of vehicles, such as automobiles, and that a red light therefore would not be a warning of an approaching danger. There was no one on the forward end of the train to look out for danger. There was a man on the tank car, beside the dome, about midway from the ends, and another man on the next car back, each man carrying a bright light or lantern; but the lanterns did not throw any light ahead of the train, and could hardly be seen from in front of the train. The bell on the locomotive was ringing automatically, but it could not be heard, or was not noticeable, in front of the train. The whistle on the locomotive was sounded at a point so far below St. Louis street that it gave no warning of danger at the street crossing.

The best evidence that the man on the forward car was not in a position to serve as a lookout is that he did not, nor did any one else on the train, know that an accident had happened until the train had gone to its destination and stopped, at Poydras street, seven or eight blocks beyond the place of the accident, when the crew was told that they had run over a man near St. Louis street. And the best evidence that the red light on the front of the tank car, the lantern on the side of the tank, and the one on the next car back, did not give warning of the approach of the train, is that the plaintiff, possessed of all his faculties, had no warning.

Although the backing of a railroad train through a city and over street crossings at night is not of itself such negligence as should render the railroad company liable for any accident that might result, it is an operation of sufficient danger to the public to require the railroad company to maintain all reasonable safeguards, such as having a bright light on the forward end of the train, and a lookout there, in a position to warn a person in danger. The defendant in this case did not fulfill that duty to the public.

[4] The amount of the judgment is not excessive. The plaintiff's left hand was cut off 2½ inches above the wrist joint; the bones in both shoulders and the right leg and six ribs were fractured; and he was severely cut and bruised about the face, head and body. The jurymen, who saw the injured man, were more capable of judging the extent of his injuries than we are. Their verdict is not manifestly insufficient in amount, and we see no reason for increasing it.

The judgment appealed from is affirmed.

PROVOSTY, J., absent on account of illness, takes no part.